GAETANO CASTIGLIA and Others, Plaintiffs, *v.* FRED R. LUCAS and Another, Defendants.

Supreme Court, Chenango County, July 7, 1928.

Vendor and purchaser — action to rescind contract of sale of farm — action based on alleged misrepresentation — plaintiffs contend that small piece of land inclosing spring was sold prior to sale of farm to them and that they had no notice — plaintiffs, after discovery of facts, failed to rescind promptly — plaintiffs cannot now rescind.

The plaintiffs purchased a farm from the defendants under a land contract and now seek to have the contract rescinded and to recover the amount paid down. The basis of the action by the plaintiffs is that a small piece of ground inclosing a spring on the farm, and a right of way for a pipe from the spring, was sold to a third person prior to the sale to the plaintiffs and that the defendants did not disclose that fact. It appears that when the plaintiffs examined the farm they were told in a general way as to the boundaries of the land, and that the defendants did not inform them that this spring had been sold to a third person, but plaintiffs after discovering that fact in January, 1926, failed promptly to rescind the contract or to bring an action therefor.

The plaintiffs commenced an action in May, 1926, to recover damages or for judgment declaring the contract null and void. The plaintiffs could not rescind in that action, for the right to rescind was inconsistent with the claim for damages. But in August, 1927, the complaint was amended to make the action one in equity for rescission. The plaintiffs, in this action, under the amended

complaint, could seek rescission and the court would render judgment for the consideration paid. However, the plaintiffs cannot succeed in this action for rescission, since they failed promptly to rescind the contract upon the discovery of the alleged misrepresentation in relation to the ownership of the spring. It was not necessary that the plaintiffs should remove from the farm upon disaffirming the contract, but they should have acted promptly in disaffirming the contract on the ground of misrepresentation. The plaintiffs may have a remedy in an action for damages.

ACTION to rescind a contract for the sale of a farm and chattels.

*Lee & Carter* [*Glenn F. Carter* of counsel], for the plaintiffs.

*Edward H. O'Connor* [*H. C. Stratton* of counsel], for the defendants.

SENN, J. On September 24, 1925, the parties hereto entered into an agreement in writing for the sale by the defendants to the plaintiffs of a farm of about 100 acres in Chenango county, on the east side of the highway running from Sherburne to North Norwich, together with cows, horses, hens and farm machinery and implements. The price was $17,000, of which $8,000 was to be and was paid at the time of signing the contract, $100 was allowed plaintiffs for moving and the remaining $8,900 was to be paid at the rate of $500 and accrued interest annually. When the principal was reduced to $7,900 a deed was to be given and a mortgage taken for the balance.

The contract described the premises only in a general way, sufficient to identify them, and among other things recited: " The foregoing premises are part of the lands described in a deed from Marian A. Whitmore et al. to first party, dated Dec. 10th, 1915, recorded in Chenango County."

The chattels sold in the same transaction and for the same consideration were described in a separate bill of sale.

Near the southwesterly corner of the farm is a spring of water which is the cause of this litigation. It has an overflow of about three and one-half gallons per minute. It is about 900 feet from the highway which runs north and south past the farm and about 700 feet from the house of Frank E. Davidson whose house lot cuts or jogs from this highway into the southerly part of the farm.

About six years before signing the contract with plaintiffs, Lucas sold to Davidson a piece of land twenty feet square which includes the spring, together with the right, under some limitations, to build and maintain a pipe to carry the water from the spring to his house. The deed was recorded but plaintiffs did not know about it or that the spring had been sold.

It is claimed on the part of plaintiffs that shortly before the contract was signed (about September fifteenth), the plaintiffs Castiglia

31

and Ariemenia together with some members of Castiglia's family went to the Lucas farm to look it over with a view to purchasing it; that Mr. Lucas went over the farm with them; that they did not follow out the precise boundaries but that at a point on a knoll about the center of the farm, commanding a view of most of it, Mr. Lucas by a sweep of his hand or arm indicated and pointed out the boundaries; that the plaintiff Castiglia, who did not speak English, noticed something in the form of a black box southerly and toward the highway from where they stood; that he turned to his son Philip and asked him to inquire of Mr. Lucas what it was; that Mr. Lucas replied that it was a box over a spring and fenced around to keep the cattle from stamping around it; that he made no mention of having sold the spring, but said the farm was all clear and no one had any claim on it.

Plaintiffs claim that the spring being in the body of the farm and located within the boundaries pointed out by Mr. Lucas, they were misled into believing that they were purchasing the farm as a whole, including the spring, without being incumbered by any easement on account of the spring or otherwise. Therefore, they have brought this action asking that their contract be rescinded and the defendants compelled to accept a return of the property sold and to repay to plaintiffs the money paid on the contract by them. Defendants deny that there was any deception or misrepresentation whatever.

On the whole evidence I am satisfied that Mr. Lucas, not intentionally, but carelessly, did mislead the plaintiffs into the belief that they were purchasing the solid unbroken piece of land known as the Whitmore farm. At any rate, they were not told that the spring and spring rights had been sold. Whether it would have made any difference to them if they had been told I cannot say. I believe that they now exaggerate the importance of this spring, but I cannot say as matter of law or as a fact that it was of no value or of only nominal value. Whatever value it did have was practically unknown to the plaintiffs when it was pointed out to them. Before that, plaintiffs were told how the house and barns were supplied with water and it was not from this spring, which probably was of no avail for that purpose. The fall from the spring to the bottom sill of the house was only two and thirty-three one-hundredths feet in a distance of more than a third of a mile.

The plaintiff Ariemenia now claims that he had intended to build a house for himself and family on the same farm southerly from the Davidson house which would have been nearer that spring than the main farm house. However, I do not believe that he had the spring in mind in that regard when he signed the contract; at

any rate, no such intent appears to have been brought to Mr. Lucas' attention.

Plaintiffs admit that in January, 1926, they learned that the spring had been sold to Davidson. They probably knew it much sooner. But after they concededly knew it, they continued in the possession of the farm, cut down valuable shade trees for firewood, sold and conveyed, jointly with the defendants, parts of the farm to the county of Chenango for highway purposes and on the whole continued to hold and conduct the farm in a manner inconsistent with an intent to rescind their contract. It is claimed by the defendants that plaintiffs sold some of the cows, but plaintiffs assert that these were cows condemned by the State as reactors and plaintiffs received the amounts awarded and purchased other cows, all of which occurred after they knew the facts as to the spring. It does not appear that they ever consulted Mr. Lucas as to what was to be done with this money or about buying other cows.

Their first definite offer to rescind was made after they commenced this action. The original complaint, dated May 5, 1926, asked for $2,500 damages or that the contract be declared void and of no effect and the consideration paid by the plaintiffs be paid back to them by the defendants.

This complaint, in so far as it attempted to rescind or claimed a rescission of the contract, was of course not good, being inconsistent with the claim for damages (*Clark* v. *Kirby*, 243 N. Y. 295), but on August 29, 1927, the complaint was amended so as to make the action one in equity for a rescission of the contract on the grounds I have indicated. This action they could bring under the authority of *Clark* v. *Kirby* (*supra*) and many other authorities and within well-settled rules of law. That is to say, not having rescinded before bringing the action, so as to entitle them to bring an action at law to recover back the consideration paid on the contract, they had the option to bring the suit in equity to have the court decree a rescission and in that action settle all the incidental rights of the parties flowing out of that rescission.

But in order to maintain that action they must, after discovery of the facts upon which they base their demand for relief, at once announce their purpose to rescind and adhere to it. One is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. (*Grymes* v. *Sanders*, 93 U. S. 55, 62.)

There are many authotities and much dictum to the effect that a purchaser who claims to be the victim of a fraud or mistake cannot, after discovery of the facts, continue in possession, treating

the property as his own and enjoying the fruits of the contract he seeks to disavow. (*Francis* v. *N. Y. & Brooklyn, etc., R. R. Co.,* 108 N. Y. 93; *Schiffer* v. *Dietz,* 83 id. 300; *Strong* v. *Strong,* 102 id. 69, 73; *Pryor* v. *Foster,* 130 id. 171; *Levy Leasing Co.* v. *Siegel,* 230 id. 634; *Stayton Realty Corp.* v. *Rhodes,* 200 App. Div. 108, 110, and many other cases to the same general effect.)

Of course, the rule that a party may not sue for a rescission, while remaining in possession, is subject to some qualifications.

" Using the property may or may not be a ratification of the contract according to the circumstances. When it appears that the acts performed are inconsistent with the claim of repudiation, then, and then only, can there be an election to confirm and adopt the contract. A particular act for which an authority may be cited as indicating an adoption of a contract may under other circumstances have no such force and effect." (CRANE, J., in *Weigel* v. *Cook,* 237 N. Y. 136, 140.)

When such purchasers offer to return the property purchased promptly on discovering the facts claimed, and the vendor does not accept such return and return the consideration paid, they were of course not obliged to move off the farm, abandoning the property and taking their chance of proving their case. After that they would have assumed the relation of trustees pending the litigation. (*Keefuss* v. *Weilmunster,* 89 App. Div. 306.)

The plaintiffs herein did not bring themselves within the rule in either of the last two cases cited and the facts were not at all similar. In *Weigel* v. *Cook* (*supra*) the plaintiffs had purchased of defendants a small tract of land with two wells or springs of mineral water, represented to have a large daily flow of natural mineral waters which were bottled and sold as they flowed from the ground. After plaintiffs had taken possession and installed modern machinery for bottling, it was discovered that the water was not natural mineral water, but required the addition of chemicals and that the flow was only a small part of what had been represented. Plaintiffs, after discovering this, defendants having refused to accept a return of the property, continued bottling and selling the water, even after commencing the suit for rescission and until the works were destroyed by fire. The court held that these acts were not inconsistent with an intent to rescind; that bottling water for two months after bringing the action in the vain attempt to make the business succeed, was such a trivial act in comparison with the large subject-matter of the transaction that it did not amount to a ratification of the contract as a matter of law. As stated by the court, " we must consider in this case the nature of the property." The value of the springs in that case was practically

everything. In the case at bar the importance of the spring is trivial compared to the farm as a whole, especially in view of the fact that there were other running springs on the farm, that the farm buildings were otherwise supplied and that there was abundant water for the cattle in a stream that flowed through the pasture.

In *Keefuss* v. *Weilmunster* (*supra*) a hotel and saloon were sold with a gross misrepresentation as to the daily receipts. On discovering the fraud the purchaser acted promptly, offering to reconvey all the tangible property and to account for all the moneys which came to her in the conduct of the business. The fact that after this she went on with the business, doing the best she could to preserve it, even procuring a renewal of the license, was held by the court not inconsistent with an intent to rescind. Here, too, the matters misrepresented were as to the most material and important part of the transaction, the good will of the business, and the acceptance of a return of the property and good will would place the defendant in as good a position as before. That is not true in the instant case and where that cannot be done courts of equity are always reluctant to rescind and will give such relief only where the clearest and strongest equities imperatively demand it. (*Grymes* v. *Sanders, supra.*)

The plaintiffs, after they discovered the facts about the spring, went right on with the farm, managing the same in a way to lead any reasonable person to believe that they intended to go on with their contract. At any rate, they put themselves in a position where they could not make the restoration required in order to maintain an action for rescission. If they have any remedy, it must be in an action for damages. (*Friedman* v. *Richman*, 213 App. Div. 467.)

Under the circumstances, the amended complaint must be dismissed but without costs and, as far as the matter may be adjudged by me, without prejudice to plaintiffs' right to recover damages.